UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ADAM L. TRITT, | ) |
|     Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:23-CV-1041-ACL ) |
| MARTIN O'MALLEY, Commissioner of Social Security Administration, | ) ) ) ) |
|     Defendant. | ) |

## **MEMORANDUM**

Plaintiff Adam L. Tritt brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite his severe impairments, Tritt was not disabled because he could perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.  Procedural History

Tritt filed his application for benefits on December 9, 2020.  (Tr. 207-09.)   He claimed

he became unable to work due to his disabling impairments on August 30, 2019.[1]  (Tr. 15.)  Tritt alleged disability due to lupus, fibromyalgia, Sjogren's syndrome, Gilbert's syndrome, arthritis, and knee pain.  (Tr. 234.)  He was 35 years of age at his alleged onset of disability date.  (Tr. 32.)  Tritt's application was denied initially.  (Tr. 135-43.)  On September 21, 2022, after holding a hearing, an ALJ denied Tritt's applications.  (Tr. 15-34.)  On June 23, 2023, the Appeals Council denied Tritt's claim for review.  (Tr. 1-4.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Tritt argues that the ALJ "failed to properly evaluate Ms. Wilmsmeyer's April 2022 medical opinion."  (Doc. 10 at 8.)

## II. The ALJ's Determination

The ALJ first found that Tritt met the insured status requirements of the Social Security Act through December 31, 2024.  (Tr. 17.)  She stated that Tritt has not engaged in substantial gainful activity since his alleged onset date.  *Id.*  In addition, the ALJ concluded that Tritt had the following severe impairments: osteoarthritis, gastritis, fibromyalgia, and systemic lupus erythematous ("SLE" or "lupus").  (Tr. 18.)  The ALJ found that Tritt did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 19.)

As to Tritt's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1467(a) except he should never climb ropes, ladders and scaffolds but is able to occasionally

---

[1] Tritt previously filed an application for benefits, which was denied by an ALJ on October 22, 2020.  (Tr. 82-103.)  The ALJ found there was no basis upon which to reopen the prior determination and, therefore, the relevant time period began on October 23, 2020.  (Tr. 15.)

> climb ramps and stairs. The claimant is able to occasionally balance (as defined in the Dictionary of Occupational Titles/Selected Characteristics of Occupations) and occasionally stoop, kneel, crouch and crawl. He is able to occasionally reach overhead and frequently handle and finger using his bilateral upper extremities. The claimant should avoid all exposure to extreme cold, unprotected heights and moving or hazardous machinery, including controlling moving machinery. He should avoid concentrated exposure to vibration.

(Tr. 20-21.)

The ALJ found that Tritt was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as circuit board assembler, document preparer, and toll collector. (Tr. 32-33.) The ALJ therefore concluded that Tritt was not disabled. (Tr. 34.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on December 9, 2020, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

### III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).  "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

      Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).  At Step Five, even though

Page **7** of **17**

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.   Discussion

Tritt argues that the ALJ failed to properly evaluate the opinion of physician assistant Sarah Wilmsmeyer, P.A.-C., in two respects.   First, Tritt argues that the ALJ failed to explain her consideration of the consistency factor as required by 20 C.F.R. § 404.1520c.   He next argues that the ALJ failed to explain why the limitations in Ms. Wilmsmeyer's April 2022 opinion were not included in the RFC determination.   The undersigned will address these claims in turn.

### 1.   Consistency Analysis

The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. §§ 404.1520c and 416.920c.   Under these regulations, an ALJ considers all medical opinions equally and evaluates their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies.   20 C.F.R. §§ 404.1520c(c), 416.920c(c).   An ALJ must "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."   20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [he] considered the supportability and consistency factors ... in [the] determination or decision."   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   The Regulations provide as follows regarding

Page **8** of **17**

supportability: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  As to consistency, the Regulations provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal.  *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)); *see also Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021).  An ALJ need not explain in his or her decision how he or she considered the other factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Ms. Wilmsmeyer provided two opinions.  First, she completed a Residual Functional Capacity Form on May 4, 2021, in which she expressed the opinion that Tritt had disabling limitations.  (Tr. 1033-36.)  In addition to finding disabling functional restrictions, Ms. Wilmsmeyer noted that "[i]n general, the unpredictability and severity of the patient's many lupus and fibromyalgia symptoms preclude his ability to perform responsibly and effectively in the workplace."  (Tr. 1035.)  She continued to note that, "[e]very day brings different challenges for this patient, challenges that make it impossible to be a reliable, productive

employee.  I fully support and recommend that he leave the workplace and apply for disability." *Id.*  Ms. Wilmsmeyer later stated that she believed Tritt could no longer work because he "has reported numerous times that working had become increasingly difficult due to extreme fatigue, brain fog, poor concentration and severe pain," reported that driving for more than 45 minutes is difficult due to pain in his arms and legs, and "has mentioned many times how hard it was to continue working."  (Tr. 1036.)

The ALJ found this opinion "not persuasive."  (Tr. 31.)  She provided the following rationale:

> First, it appeared Ms. Wilmsmeyer relied quite heavily on the subjective report of symptoms and limitations provided by the claimant at his appointments and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reason for questioning the reliability of the claimant's subjective complaints.  Though she found quite extreme limitations, the claimant was at the same time reporting to his therapist that he continued to engage in extreme sports, was building a bike trail, was working at a wood shop, and took family vacations in his camper.  This is not consistent with her findings of such debilitating limitations.  In addition, Ms. Wilmsmeyer's limitations are not supported in her contemporaneous office or progress notes.  Her own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.  Further, the claimant was repeatedly counseled by Ms. Wilmsmeyer to engage in regular daily exercise.

*Id.*  Tritt does not challenge the ALJ's evaluation of Ms. Wilmsmeyer's May 2021 opinion.

On April 13, 2022, Ms. Wilmsmeyer completed a "Medical Statement Regarding Lupus for Social Security Disability Claim."  (Tr. 1679-80.)  She stated that Tritt's diagnosis of lupus had been established based on numerous serologic markers and clinical features such as photosensitivity, arthritis, pleurisy, oral ulcers, anemia, and leukopenia.  (Tr. 1679.)  Tritt had severe symptoms of fatigue and malaise.  *Id.*  Ms. Wilmsmeyer indicated that Tritt had a history of joint pain, swelling, and tenderness, and that his most recent examination revealed joint inflammation in his bilateral hands and right knee.  *Id.*  Tritt was able to ambulate

effectively and perform fine and gross manipulation of both hands effectively. (Tr. 1680.) Ms. Wilmsmeyer expressed the opinion that Tritt could stand for 15 minutes at a time, sit for 60 minutes at a time, work no hours, lift 20 pounds occasionally and lift no amount of weight frequently, could never stoop, and could occasionally bend, engage in fine and gross manipulation bilaterally, and raise his arms over shoulder level bilaterally. *Id.* Ms. Wilmsmeyer stated that her opinion regarding Tritt's limitations was "not based on any functional capacity exam," but was based on "knowing the patient for several years." *Id.*

The ALJ found the April 2022 opinion "partially consistent." (Tr. 31.) She noted that Ms. Wilmsmeyer's treatment notes "routinely find no issues with the claimant's extremities, he demonstrates full 5/5 strength in all extremities, full range of motion and full grip." *Id.* The ALJ further stated that, although Ms. Wilmsmeyer "had a long term treating relationship with the claimant, she did not reference any of these limitations in any of her treatment notes." *Id.*

Tritt argues that the ALJ erred in failing to articulate her consideration of the consistency with other evidence when evaluating Ms. Wilmsmeyer's April 2022 opinion.

It is true that the ALJ did not provide a consistency analysis with regard to Ms. Wilmsmeyer's second opinion. As Tritt points out, however, the new regulations provide for "source-level articulation." Pursuant to this requirement, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record." *Id.*, § 404.1520c(b)(1). "Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that

Page **11** of **17**

medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.*   The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

Here, the ALJ articulated her consideration of the consistency of the other evidence when discussing Ms. Wilmsmeyer's May 2021 opinion.   She noted that Ms. Wilmsmeyer relied heavily on Tritt's subjective complaints, yet "as explained elsewhere in this decision, there exist good reason for questioning the reliability of the claimant's subjective complaints."   (Tr. 31.) The ALJ stated that, despite Ms. Wilmsmeyer's extreme limitations, Tritt "was at the same time reporting to his therapist that he continued to engage in extreme sports, was building a bike trail, was working at a wood shop, and took family vacations in his camper.   This is not consistent with her findings of such debilitating limitations." *Id.*

A review of the records cited by the ALJ supports her finding regarding the inconsistency of Ms. Wilmsmeyer's opinion with Tritt's reported activities.   Specifically, the therapy notes of Laura Kern, LPC reveal the following:

- On July 21, 2020, Tritt reported he and his family had been using their camper to go out of town and have small vacations, which he found helpful.   (Tr. 1011.)

- On October 28, 2020, Tritt reported he bought a snowboarding pass for the kids for winter, and he looked forward to this.   He continued to get some things done around the home.   (Tr. 1013.)

- On April 21, 2021, Tritt reported baseball season was in full swing for his son and his daughter was starting softball.   This was keeping him busy.   He also reported

his knee surgery a few weeks prior went well and he was walking and regaining mobility.  (Tr. 1017.)

- On June 8, 2021, Tritt reported that he was "very aware that his choices in extreme sports does not help his pain but he does not wish to give up what he enjoys."  (Tr. 1512.)   He further reported that he continued to do projects at home, and "work at his buddy's wood shop."  *Id.*  Additionally, he was taking his son to his baseball tournament at the lake that weekend, and the family had the "month of June booked for using their camper."  *Id.*

- On July 8, 2021, Tritt discussed his recent camping trip and plans for upcoming weekends.  (Tr. 1514.)

- On August 3, 2021, Tritt reported that the family had gone on a lot of camping trips, and he was "only working a day or two a week with his Lupus and major bone injuries."  (Tr. 1516.)

- On September 2, 2021, Tritt talked about a float trip he had recently gone on "with a buddy and his son."  (Tr. 1517.)   He reported that the trip "was enjoyable."  *Id.*   Tritt continued to "stay busy with home projects and [his] son's baseball schedule.  *Id.*

- On November 17, 2021, Tritt reported he "had a hard work day physically yesterday and was hurting a bit today."  (Tr. 1521.)   He also discussed his frustration with the management of the bike trail park he had spent years building.  *Id.*   Tritt indicated that he "loves to be at the bike park alone when he is in depressed moods."  *Id.*

The ALJ provided an adequate analysis of the inconsistency between Ms. Wilmsmeyer's

May 2021 opinion and the medical and other evidence. Ms. Wilmsmeyer's April 2022 opinion differed slightly in the specific functional limitations provided but both opinions ultimately concluded that Tritt had disabling limitations. When asked on the April 2022 questionnaire how many hours Tritt could work each day, Ms. Wilmsmeyer selected "none." (Tr. 1680.) The consistency analysis the ALJ provided in the previous paragraph addressing Ms. Wilmsmeyer's May 2021 opinion applies equally to Ms. Wilmsmeyer's April 2022 opinion. Tritt's reported activities of camping, attending sports events, participating in "extreme sports," working on home projects, working at a friend's wood shop, building a bike trail, and going on float trips are wholly inconsistent with the presence of disabling impairments. Tritt engaged in these activities on a consistent basis from July 2020 through November 2021, after his August 2019 alleged onset of disability date.

In sum, although it would have been preferable for the ALJ to restate her consistency analysis when addressing Ms. Wilmsmeyer's April 2022 opinion, the regulations do not require this. The ALJ's consistency finding is supported by substantial evidence, and the ALJ did not commit reversible error in failing to articulate the consistency of Ms. Wilmsmeyer's later opinion.

**2. RFC Determination**

Tritt next argues that the ALJ failed to explain why the limitations in Ms. Wilmsmeyer's April 2022 opinion were not included in the RFC. He contends that the ALJ found Ms. Wilmsmeyer's opinion "partially consistent," but included numerous abilities in the RFC conflicting with her opinion. Tritt argues that if the ALJ had adopted Ms. Wilmsmeyer's limitation to occasional handling and fingering, all sedentary work would have been precluded.

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician. *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion." *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The ALJ limited Tritt to sedentary work, with additional limitations in his ability to climb, balance, reach overhead, handle and finger with his bilateral upper extremities, and his exposure to environmental factors. (Tr. 20-21.) In determining Tritt's RFC, the ALJ first conducted an exhaustive summary of the medical evidence and Tritt's described daily activities. (Tr. 22-29.) The ALJ then offered the following explanation for her RFC assessment:

> The above residual functional capacity assessment provides accommodation for the claimant's impairment-related symptoms, including fatigue, and exertional limitations which the claimant regularly exceeds with his activities. However, the undersigned declines to find greater ability on a sustained basis, as would be required with full time work at a greater exertional level although there is support in the record the claimant could sustain light exertional work given the activities in which he routinely engages.

(Tr. 29.)

The ALJ next discussed the medical opinion evidence. In addition to Ms. Wilmsmeyer's opinions, the ALJ evaluated the prior administrative medical findings. She noted that the most

Page **15** of **17**

recent state agency medical consultant found Tritt was capable of performing light work, except standing and walking for two hours in a workday; occasional climbing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to vibration and hazards. (Tr. 30, 134-35.) The ALJ found this opinion "not persuasive." (Tr. 30.) She explained that the medical consultants found "significantly less restrictive limitations, however, the record reflects ongoing complaints of pain and objective findings including persistent knee swelling." *Id.* As such, the ALJ concluded that "a more limited residual functional capacity is better supported." *Id.*

Tritt contends that the ALJ erred in failing to adopt all the limitations set forth in Ms. Wilmsmeyer's April 2022 opinion despite finding it "partially consistent." (Tr. 31.) The ALJ, however, did not indicate she was adopting Ms. Wilmsmeyer's opinion. Instead, as previously discussed, she found the disabling limitations set forth in the opinion were inconsistent with Tritt's reports to his counselor of his extensive daily activities. With regard to Tritt's ability to handle and finger, the ALJ found that Ms. Wilmsmeyer's treatment notes routinely indicated no issues with Tritt's extremities, full strength in all extremities, full range of motion, and full grip strength. (Tr. 31, 711, 718, 725, 1240-42, 1249, 1257, 1260, 1266, 1275, 1284, 1294, 1566, 1575, 1584, 1593, 1603.) Thus, the ALJ adequately explained why a greater limitation in Tritt's ability to handle and finger was not warranted.

The undersigned finds that the RFC determination is supported by substantial evidence on the record as a whole. In her discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record. *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions). She considered Tritt's ongoing complaints of pain and objective findings including persistent knee swelling when restricting him to a very limited range of sedentary work. The ALJ's RFC

Page **16** of **17**

determination is *more restrictive* than that of the prior administrative medical findings. The ALJ also considered Tritt's statements regarding his daily activities when determining his RFC. Tritt's reports of consistently engaging in strenuous physical activities, including work activity, during the relevant period are wholly inconsistent with his claims of disabling pain and limitations.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2024.